UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JIM HAWVER,                                                                  Case Number: 21-cv-1646

                           Plaintiff,

               -v-                                                        **FIRST AMENDED COMPLAINT WITH JURY DEMAND**

CANON U.S.A., INC.,

                          Defendant.
-------------------------------------------------------X

Plaintiff, JIM HAWVER ("Mr. Hawver" or the "Plaintiff") by and through his attorneys, THE LAW OFFICES OF WILLIAM CAFARO, as and for his Complaint against CANON U.S.A. INC. (the "Company" or "Canon" of "Defendant"), alleges upon knowledge to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1. This is action is brought pursuant to the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act, §760.01, et. seq., ("FCRA") and other appropriate rules, regulations, statutes and ordinances.

## JURISDICTION AND VENUE

2. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, insofar as it involves statutes of the United States, specifically, the ADEA. Plaintiff relies upon 28 U.S.C. § 1367 to

invoke supplemental jurisdiction with respect to the Florida causes of action which form other bases for recovery upon the same factual nexus.

3. Plaintiff further and alternatively invokes 28 U.S.C. § 1332, insofar as it involves a Defendant who is a citizen of New York for the purposes of diversity jurisdiction and a Plaintiff who is a citizen of the state of Florida for the purposes of diversity jurisdiction.

4. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events giving rise to the claim occurred in this judicial district and the only Defendant can be found here.

## ADMINISTRATIVE PROCEDURES

6. On or about December 15, 2020, prior to filing this lawsuit, Mr. Hawver filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Canon for their violations of the ADEA.

7. Pursuant to a work sharing agreement, Mr. Hawver's charge was cross filed with Florida Commission on Human Relations ("FCHR")

8. Plaintiff received a notice of right to sue dated January 29, 2021 from the EEOC

9. Plaintiff has filed his original complaint within 90 days of receiving a notice of right to sue from the EEOC.

10. More than 180 days have passed since Plaintiff's charge of discrimination was cross filed with the FCHR.

11. The FCHR has neither conciliated nor issued a determination of whether there is reasonable cause.

12. Any and all prerequisites for filing this action have been met.

## *THE PARTIES*

13. The Plaintiff, Mr. Hawver is an individual residing in Okaloosa County in the State of Florida.

14. At all times herein pertinent, Plaintiff was an "employee" and "person" within the meaning of the ADEA and the FCRA.

15. At all times herein pertinent, upon information and belief, Canon was and is a business corporation created pursuant to the laws of the State of New York.

16. At all times herein pertinent, upon information and belief, Canon's principal place of business was and is located at One Canon Park, Melville, New York 11747.

17. At all times herein pertinent, Canon was an employer of Mr. Hawver within the meaning of the ADEA and the FCRA.

18. At all times herein pertinent, Canon had not less than twenty (20) persons in its employ.

19. At all times herein pertinent, Canon had not less than fifteen (15) persons in its employ.

## BACKGROUND FACTS

20. According to its corporate profile, Canon U.S.A., Inc. is a leading provider of consumer, business-to-business, and industrial digital imaging solutions.

21. The corporate decisions regarding Plaintiff's employment including, but not limited to, firing, paying, and administering the terms, conditions and privileges of his employment were all made at the principal office of the Company in Melville, New York.

22. Mr. Hawver began working for Canon in December of 2015, and was assigned to surveillance products in the Imaging, Technology and Communications Group ("ITCG").

23. Although he was hired when he was 58 years old, Mr. Hawver had the appearance of a much younger man in his 40s.

24. Throughout his employment with Defendant, Plaintiff worked out of Canon's New Melville office.

25. At all times herein pertinent, David Kubota ("Kubota"), as the Senior Manager of Strategic Sales at Canon, had supervisory authority over the Business Development section of the Imaging, Technology and Communications Group.

26. As such, Kubota had the authority to hire, fire, discipline, supervise, and direct the Plaintiff, and administer the terms, conditions and privileges of his employment.

27. As such, Kubota had the authority to select those employees who would or would not be selected for termination and/or inclusion in any reduction in force.

28. Plaintiff alternatively alleges that if Kubota did not have the authority to fire the Plaintiff, that he certainly had the authority and the power to recommend firing, termination and/or selection for inclusion in any reduction in force, and that his recommendation would be accorded great weight in the decision-making process.

29. Once Kubota learned Mr. Hawver's age he began a campaign of discrimination against Mr. Hawver based on Mr. Hawver's age.

30. In or about December 2016, when a corporate level decision was made to outsource surveillance to another company, Kubota assigned Mr. Hawver to Business Development of Visual Information "box" products (out of the box as opposed to systems integrated) to the DoD (Department of Defense).

31. The ITCG had previously attempted to market to the armed services but had been unable to achieve any success with it because the market had already been cornered by Nikon. As such, Kubota knew that this sector would be unprofitable and gave the assignment to Mr. Hawver because of Mr. Hawver's age.

32. When Kubota assigned Mr. Hawver to this dead end project, Kubota told Mr. Hawver that Canon sales in the DoD market could never exceed $2M, and there was absolutely no future in box sales because the industry was converting to systems integrated markets. When Plaintiff asked him why he was being assigned to a market that had absolutely no future, Kubota had no answer for him.

33. In or around September 2018, Mr. Hawver had a meeting with Kubota to discuss a plan or strategy for sales to the DoD. However, Kobuta again showing his discriminatory motives, refused to provide or even help Mr. Hawver create a plan of action to make Box sales to the DoD. Upon information and belief, Kobuta routinely had discussions with younger employees to formulate plans and strategies for sales.

34. In or around September 2018, Kubota told Plaintiff that no matter what he did, he would never receive any notation above average on his annual review during the time he worked there. Kubota made good on this threat despite Plaintiff's exceptional sales accomplishments. Upon information and belief, younger employees who did not have as much in sales as the Plaintiff received higher ratings on their annual reviews.

35. Throughout his employment with the Defendant Kubota told the Plaintiff to keep current on the new product and competitive comparison with the product group. However, to keep Mr. Hawver uninformed of the new products, Kubota informed the product group not to speak to Mr. Hawver. Kubota gave no such instruction concerning younger employees.

36. Moreover, although he routinely helped younger employees with sales leads, he utterly refused to provide Mr. Hawver with any sales leads. Undeterred, Mr. Hawver utilized networking to build a customer base from the ground up.

37. Unlike the other people on his team Plaintiff normally worked 16-hour days and put in a great deal of weekend time as well, traveling extensively and attending military bases, making presentations to the Department of Defense, and meeting with military procurement personnel.

38. As his manager, Kubota had the option of granting Plaintiff comp time, which Plaintiff, being a single father, requested to spend with his children. In response, Kubota replied that Canon doesn't care about its employees and he would have to just suck it up. Upon information and belief, Kubota routinely granted comp time to younger employees who worked fewer hours than the Plaintiff.

39. At all times herein pertinent, Kubota attempted to sabotage Plaintiff's efforts to be a successful salesman at the Company.

40. Kubota always made it much more difficult or impossible for Plaintiff to get approval for relatively small amounts of expense money for speakers and/or promotional products for the trade shows and events which Plaintiff organized, when similar requests made by other younger members of Plaintiff's team were routinely granted as a matter of course.

41. The amounts of money which Plaintiff ultimately had approved in expenses were always extremely modest in proportion to the amount of sales he generated.

42. Plaintiff began generating very impressive sales to each of the armed services very quickly, and grossed approximately $1M in sales his first year.

43. The Plaintiff was a stellar employee, and had never been the subject of any discipline or substandard performance evaluation.

44. Plaintiff generated approximately $5-6M in sales in his second year.

45. Plaintiff generated approximately $8M in sales in his third year.

46. Plaintiff had generated approximately $12M in sales in 2020 by his termination date of May 20, 2020.

47. By the end of June 2020, Plaintiff's sales would have been no less than $18M.

48. There were 3 other salespeople in the Business Development section of the ITCG at the time of Plaintiff's termination.

49. The *combined total sales of the other 3 salespeople* who did business development for ITCG for any given year never touched 20% of the Plaintiff's sales for any comparable period.

50. Despite the foregoing, Plaintiff was the only one of the four salespeople in his group slated for termination in connection with the reduction in force.

51. Mr. Hawver was 63 years of age on the date of his termination, which was May 12, 2020.

52. Kubota had commented to another employee to the effect of "you're too old, and you've been here too long", and, upon information and belief, that employee was terminated within a few months thereafter.

53. In written materials the Company distributed in connection with the Plaintiff's termination, the criterion allegedly utilized for selection of employees for termination were "future business needs, location, performance, tenure, and business continuity".

54. Regardless of the projected future business needs of the Company, it was facially pretextual to say that keeping the other three salespeople in the Plaintiff's group was better suited to any future business needs situation than keeping the Plaintiff would have been.

55. Location, which has become much less relevant in recent times, has been rendered almost completely meaningless in the advent of the Coronavirus pandemic.

56. Plaintiff's performance totally eclipsed the performance of any of the other members of his group who were retained as employees.

57. Substantially all of the sales the Plaintiff generated were to military end users, and Plaintiff, who is a veteran who had already established the relationships and was familiar with the account histories and coverage, would certainly be better suited to business continuity with the military than any of the other salespeople in Plaintiff's group.

58. Upon information and belief, when Kubota was asked which of the direct reports under him should be eliminated in connection with the reduction in force precipitated by the Coronavirus pandemic, Kubota saw his chance to get rid of the Plaintiff and put him to the top of the list.

59. Upon further information and belief, the individual(s) who had the ultimate responsibility for the termination decisions gave great weight to the direct supervisors because they were in the best position to make such judgments.

60. Upon further information and belief, the individual(s) who made the decision to include Plaintiff in the reduction in force gave great weight to the recommendation made by Kubota.

61. Upon information and belief, Mr. Hawver was replaced by someone under 40 years old.

62. Upon information and belief, a substantial portion of the tasks Plaintiff did were distributed to a person/people who were approximately 30 years old. Specifically, upon information and belief, the majority of Plaintiff's tasks were distributed to Tagen Pendleton.

63. Employees outside Plaintiff's protected class have and continue to be treated more favorably than Plaintiff.

64. Upon information and belief, Defendant disciplined and terminated its older employees far more often than its younger employees.

65. In written materials the Company distributed in connection with the Plaintiff's termination, the Defendant terminated 11 people in this RIF. The average age of those who were terminated approximately 53 years old.

66. Of the employees terminated by the Defendant *over 90%* of the employees were aged 40 or over.

67. Defendant terminated Plaintiff because of his age.

## DEMAND FOR JURY TRIAL

68. Plaintiff demands a trial by jury on all claims in this action.

### *FIRST CLAIM FOR RELEF AGAINST DEFENDANT*
### *Discrimination Under the ADEA*

69. Plaintiff incorporates all the preceding paragraphs of this Complaint herein with the same force and effect as if fully set out at length.

70. The ADEA provides that it shall be unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

71. Being over 60 years old at the time of his termination, the Plaintiff was a member of the class protected by the ADEA.

72. Defendant discriminated against Plaintiff on the basis of Plaintiff's age in violation of the ADEA.

73. Defendant's unlawful discrimination was willful.

74. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

### *SECOND CLAIM FOR RELEF AGAINST DEFENDANT*
### *Discrimination Under the FCRA*

75. Plaintiff incorporates all the preceding paragraphs of this Complaint herein with the same force and effect as if fully set out at length.

76. The FCRA provides that it shall be unlawful discriminatory practice for an employer:

> To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

77. Defendant discriminated against Plaintiff on the basis of Plaintiff's age in violation of the FCRA.

78. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

79. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

80. Defendants have acted with malice or reckless indifference to the Plaintiff.

### *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff requests a judgment against the Defendants:

a. Declaring that the Defendant has violated the aforementioned statute;

b. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. Awarding future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income, diminution in Plaintiff's prospective social security benefits which will be computed over the Plaintiff's prospective statistical life expectancy, and all other benefits the Plaintiff would have expected to earn during the Plaintiff's lifetime had it not been for Defendant's unlawful discrimination;

d. Awarding damages to the Plaintiff to make the Plaintiff whole for any economic losses suffered as a result of such unlawful employment practices;

e. Awarding statutory penalties as may be available;

f. Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering in an amount to be proven at trial;

g. Awarding Plaintiff liquidated damages;

h. Awarding Plaintiff attorneys' fees and costs and expenses incurred in the prosecution of the action;

i. Awarding pre and post-judgment interest as provided by law;  and

j. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the s' unlawful employment practices.

Dated:  New York, New York
August 17, 2021

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

_____
William Cafaro, Esq. (WC 2730)
Amit Kumar, Esq. (AK 0822)

*Attorneys for Plaintiff*
108 West 39th Street, Ste. 602
New York, New York 10018
(212) 583-7400
BCafaro@CafaroEsq.com
AKumar@CafaroEsq.com

13